UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**     Order GRANTING Motions for Final Approval of Settlement Agreement and Award of Attorneys' Fees, Litigation Expenses, and Service Award

      Before the Court are Plaintiff Mark Turner's ("Plaintiff") motions for final approval of class settlement, attorneys' fees and costs, and service award.  Dkts. # 35, 36.  The Court held a fairness hearing on April 18, 2016.  Having considered the arguments in all of the submissions, as well as those raised at the April 18, 2016 fairness hearing, the Court GRANTS Plaintiff's motions.

I.     Background

      Plaintiff filed this lawsuit in the Superior Court of San Bernardino County on behalf of himself and a putative class consisting of persons who were employed by Defendant as Driver Managers at any time between February 4, 2010 and April 30, 2015.  Dkt. # 1, *Notice of Removal* ["NOR"], Ex. A.  Plaintiff filed a First Amended Complaint on April 22, 2014.  *See NOR*, Ex. B.  Defendant removed the action October 27, 2014.  *See NOR.*  On April 20, 2015 for the purposes of settlement only, Plaintiff filed the Second Amended Complaint ("SAC").  Dkt. # 21 ("SAC"); Dkt. # 36-2, *Declaration of Normal B. Blumenthal ISO Motion for Final Approval of Class Settlement* ["Blumenthal Decl."], ¶ 6(a).

      The SAC concerns Defendant's alleged misclassification of Plaintiff and other Driver Managers as exempt employees, a classification which deprived them of appropriate compensation for time worked pursuant to various state and federal labor codes.  *See generally SAC*.  The SAC includes claims for (1) failure to pay overtime under the California Labor Code, applicable Wage Order, and corresponding regulations; (2) failure to pay overtime under the Fair Labor Standards Act ("FLSA") and corresponding regulations; (3) failure to pay minimum wage under the California Labor Code, applicable Wage Order, and corresponding regulations; (4)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

failure to pay minimum wage under the FLSA and corresponding regulations; (5) failure to pay all wages owed each pay period under the California Labor Code, applicable Wage Order, and corresponding regulations; (6) failure to pay all wages owed upon separation under the California Labor Code, applicable Wage Order, and corresponding regulations; (7) failure to provide meal periods under the California Labor Code, applicable Wage Order, and corresponding regulations; (8) failure to provide rest periods under the California Labor Code, applicable Wage Order, and corresponding regulations; (9) failure to provide and maintain accurate itemized wage statements; (1) failure to comply with the Private Attorney General Act ("PAGA"); and (11) derivative relief under the California Business and Professions Code § 17200, *et seq.*

On October 17, 2014, ten days before this action was removed, the Parties participated in an arms-length mediation presided over by Gig Kyriacou. Although the parties did not reach a settlement on that day, they continued to negotiate over the next month. *Id.* ¶ 6(e). Ultimately, with the help of Mediator Kyriacou, the parties reached agreed to settle the action. *Id.*

The settlement was finalized and executed by the end of March, 2015. Class Counsel filed a preliminary motion asking the Court to approve the settlement, which the Court denied on August 20, 2015. Dkt. # 27. While the Court noted that "most of the terms of the proposed Settlement Agreement fall within the range of possible approval," it was concerned that the stipulation and proposed notice did not describe a settlement by which Class Members would release their FLSA claims only if they decided to opt-in. *Id.* at 9. The parties revised the Settlement Agreement and resubmitted it for approval. *Blumenthal Decl.* ¶ 7(d).

Under the terms of the Settlement Agreement, Defendant agrees to pay $295,000 (the "Settlement Payment") in consideration for the settlement and release of all claims. Dkt. # 36-2 ("Settlement Agreement") ¶ II(JJ). The Settlement Payment will fund (i) the settlement shares to Class Members; (ii) attorneys' fees and costs to Class Counsel; (iii) the Plaintiff's service payment; (iv) the fees and expenses of the Settlement Administrator; and (v) payment in the amount of $3,750 to the California Labor and Workforce Development Agency ("LWDA") for the penalties associated with participating class members' PAGA claims. *Id.* The remaining funds will constitute the Net Qualified Settlement Fund ("Net QSF"), which will be allocated to participating FLSA members. *Id.* The Settlement Agreement provides that Class Counsel may apply for up to 25% of the Settlement Payment for reasonable attorneys' fees and for reimbursement of litigation costs not to exceed $15,000. *Id.* ¶¶ VI and XIV. Plaintiff will also apply for approval of a service payment of up to $7,500. *Id.* ¶ VI. The costs of settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

administration in the amount of $11,000 will be paid to the settlement administrator. *Id.*; *Blumenthal Decl.* ¶ 3(e).[1]

The Court granted preliminary approval of the Settlement Agreement on December 3, 2015 finding that the terms fell within the range of possible approval. Dkt. # 34. The Court appointed Gilardi & Co. ("Gilardi") as settlement administrator. *Id.* On January 7, 2016, Gilardi sent notice to the 58 current and former employees who comprise the class. *Blumenthal Decl.* ¶ 7(e). The notice provided Class Members with an opportunity to file a claim for monetary relief, to opt out, or to object. *Id.* 37 Class Members filed claims, representing 60% of the total work weeks for the class. *Id.* ¶ 7(f). No Class Members filed objections. *Id.*

Plaintiffs now seek final approval of the Settlement Agreement and the plan of allocation, as well as attorneys' fees, costs and incentive awards. Dkts. # 35, 36.

II.     Discussion

    A.     Final Approval of the Class Settlement

        i.     *Legal Standard*

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement…is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that

---

[1] Although Gilardi initially estimated costs of $10,000, actual administration costs came out to $11,000 because of "the change in the scope of the settlement, including the claims process and the addition of the Reminder Postcard." *Fees Mot.* 7; *Blumenthal Decl.* ¶ 3(e).

Case 5:14-cv-02207-PSG-SP Document 41 Filed 04/18/16 Page 4 of 15 Page ID #:1327

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

must be examined for overall fairness."). The Court may not delete, modify or rewrite particular provisions of the settlement. *Id.* The district court is cognizant that the settlement "is the offspring of compromise; the question…is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.*

For collective actions under the FLSA, the Court is not bound to exercise the same oversight as it must exercise with a class action under Federal Rule of Civil Procedure 23(e). Whereas the Court's role in supervising the settlement of a class action "protects unnamed class members 'from unjust or unfair settlements affecting their rights,'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), members of an FLSA collective action have opted-in affirmatively. A court's involvement in the management of their action "has less to do with the due process rights" of those to be bound by a settlement, "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

Still, a court may not approve an FLSA settlement without determining whether it is "a fair and reasonable resolution of a bona fide dispute." *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (quoting *Yue Zhou v. Wang's Rest.*, No. C 05-0279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)); *see also Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010) ("courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes"). If the settlement reflects a reasonable compromise over FLSA issues, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lepinske v. Mercedes Homes, Inc.*, No. 6:07-cv-9150Orl-31 DAB, 2008 WL 269411, at *1 (M.D. Fla. Jul. 7, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Because of the inherent differences between class actions and individual FLSA settlements, some of the Rule 23 "fairness" factors do not apply to FLSA collective action settlements. *Lewis*, 2012 WL 2930867, at *2. However, "[s]everal courts have regularly applied the Rule 23…factors when evaluating the fairness and reasonableness of an FLSA settlement." *Id.*

        ii.    *Discussion*
            a.    Strength of Plaintiff's Case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

Although Plaintiffs believe they have a strong claim against Defendant, they are cognizant that they face several challenges that could preclude class certification or lead to a significantly lower recovery for Class Members. *See Mot.* 13; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.") (citations omitted).

For example, Defendant explains that Plaintiff's claims for overtime and meal break violations lack merit because the broad authority, responsibilities and discretion afforded to Defendant's Driver Managers clearly qualify them as exempt from typical meal and rest break requirements. *See* Dkt. # 37 at 4. Plaintiff also acknowledges that the Court could find that Class Members were provided with meal periods under existing California law. *Mot.* 18.

Defendant also argues that class certification would never occur because individualized issues predominate over any alleged common questions. *Dkt. #* 37 at 8. Defendant explains that because it has never adopted a policy common to all Driver Managers regarding the work which might qualify them under the exemption, the question of whether any individual Driver Manager was misclassified as exempt would need to be determined on an individual basis based on his or her unique activities. *Id.* at 8. Defendant maintains that the variation in each putative class member's duties – and therefore classification status – would present a significant hurdle to Plaintiff in demonstrating commonality. *Id.* at 8-10.

After considering the memoranda submitted by the parties, the Court agrees that this factor weighs in favor of approving the Settlement Agreement.

> b. *Risk, Expense, Complexity and Duration of Further Litigation*

In light of the "strong judicial policy that favor[s] settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), the Court finds that this factor weighs in favor of approval of the Settlement. If the Court were to deny certification, there would be a significant risk that none of putative class members would be able to afford to pursue their claims further and that Plaintiff would have difficulty pursuing his claims in isolation. *See Mot.* 18. Moreover, the parties note that the litigation has already been underway for a year and a half and that even if Plaintiff pursued this case and received favorable outcomes at certification and at trial, Defendant would be likely to appeal the decision. *Id.* Plaintiff states that the "benefits of a guaranteed recovery today, of the very remedy that Plaintiff would seek at trial, outweigh an uncertain result three or more years in the future." *Id.*; *Blumenthal Decl.* ¶ 8(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

    *c.*  *Risk of Maintaining Class Action Status Throughout the Trial*

 Although the Court has certified the Class, the certification was for settlement purposes only.  Under Federal Rule of Civil Procedure 23(c)(1)(C) an "order that grants or denies class certification may be altered or amended before the final judgment."  Fed. R. Civ. P. 23(c)(1)(C). The Court has already discussed the risk that the Court would find the variation in each Driver Manager's job responsibilities to preclude a finding of commonality.  This factor therefore weighs in favor of final approval.

    *d.*  *Amount Offered in Settlement*

 Defendant will pay $295,000 in consideration for the settlement and release of all claims. *Settlement Agreement* ¶ II(JJ).

 "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted).  In that vein, the Ninth Circuit has explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625 (citations omitted).  Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as the expenses and delay associated with continued litigation.

 Class Counsel represents that based on the class data received from Defendant's payroll information and the assistance of a damages expert, the maximum possible recovery was $1,390,595. *Blumenthal Decl.* ¶ 8(d).  The Settlement Amount therefore represents more than 21% of the possible recovery, assuming those amounts could be proved at trial.  *Id.*  That percentage is within the range of that which the Ninth Circuit has approved.  *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming approval of class settlement which represented roughly one-sixth of the potential recovery).  The Court finds the amount further reasonable in light of the likely impediments to certification and the strong defenses available to Defendant.

    *e.*  *Extent of Discovery Completed and Stage of the Proceedings*

 This factor requires the Court to gauge whether Plaintiffs have sufficient information to

Case 5:14-cv-02207-PSG-SP Document 41 Filed 04/18/16 Page 7 of 15 Page ID #:1330

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail,* LLC, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citation omitted).

The discovery and investigation of this action included: multiple meetings and conferences with Plaintiff; inspection and analysis of documents and materials produced by the parties; analysis of the various legal positions taken and defenses; investigation into the viability of class treatment of the claims asserted in the action; analysis of potential class-wide damages; research of the applicable law with respect to the claims asserted in all of the complaints and the potential defenses thereto; the exchange of information through informal discovery; and the assembly of data for calculating damages. *Blumenthal Decl.* ¶ 6(c). Class Counsel also analyzed the value of the Class Members' claims based on payroll and employment data provided by Defendant during the course of litigation. *Id.* In preparation for mediation, both parties researched and prepared lengthy mediation briefs. Plaintiff engaged accounting experts to prepare calculations of the damages under possible outcome scenarios. *Id.* ¶ 7(b).

The Court therefore finds that Plaintiffs did not negotiate the Settlement Agreement in a vacuum, but made an informed decision based on the strengths and weaknesses of their allegations. This factor weighs in favor of granting final approval.

      *f.*  *Experience and Views of Counsel*

The recommendations of Plaintiff's counsel are given a presumption of reasonableness. *See, e.g., In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Plaintiff's counsel has extensive class action experience in many fields, particularly with respect to labor and overtime litigation. *Id.* ¶ 2. Class Counsel has also participated in every aspect of the settlement discussions thus far, and finds the settlement to be fair, adequate, reasonable, and in the best interests of the class. *Id.* After reviewing Class Counsel's firm resume, the Court sees no evidence to rebut the presumption that Class Counsel's recommendation should be regarded as reasonable. This factor therefore weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

*g. Presence of a Government Participant*

Because no government entities are participants in this case, this factor is neutral.

*h. Reaction of the Class Members to the Proposed Settlement*

Out of the 58 employees in the class, 37 submitted claim forms. Only one class member requested exclusion and none objected. *Blumenthal Decl.* ¶ 4. The response to the Settlement Agreement suggests that the Class finds the settlement to be fair, reasonable and adequate. *See, e.g., Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). Accordingly, this factor also weighs in favor of final approval.

The factors weigh in favor of approval of the settlement. *See id.* at 1026. Accordingly, the Court GRANTS Plaintiff's motion for final approval of the Settlement Agreement.

B.   Plan of Allocation

A plan of allocation under Rule 23 "is governed by the same standards of review applicable to the settlement as a whole; the plan must be fair, reasonable and adequate." *Vinh Nguyen v. Radient Pharma. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. 2014). To be approved, the plan needs to have a reasonable, rational basis. *Id.*

The Settlement Agreement provides that the Net QSF will be allocated to participating FLSA Class Members. Participating FLSA Class Members' shares will be calculated using the total weeks worked by all participating FLSA Class Members, based on the dates they held an exempt Driver Manager position in California ("total work weeks"). *Settlement Agreement* ¶ XIX(A)(2). Each participating FLSA class member's work weeks will then be divided by the total work weeks to determine his or her proportionate share of the Net QSF. *Id.* Participating FLSA Class Members will then be mailed a check for their settlement share. *Id.* ¶ XIX(A)(1). All checks which remain uncashed after 180 days will be distributed on a pro rata basis to the participating FLSA Class Members who did cash their checks, based on the number of workweeks each participating FLSA class member worked during the class period. *Id.* ¶ XIX(A)(5).

The plan of allocation is rationally grounded in the number of weeks a class member worked, and therefore how many violations he or she is likely to have suffered. Moreover, the plan does not provide for any of the Settlement Amount to revert to Defendant. Because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

Court finds that the plan of allocation is reasonable, it GRANTS approval of the plan of allocation.

    C.    <u>Motion for Attorneys' Fees, Costs and Service Award</u>

Plaintiffs request the following to be disbursed from the Settlement Amount: (1) $73,750 in attorneys' fees (which constitutes 25% of the Settlement Amount); (2) reimbursement for litigation costs and expenses in the amount of $14,124.28; and (3) a $7,500 incentive award for Plaintiff. *See Fees Mot.*

    *i.*    *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No CV09-06750 MMM (DTBx), 2010 WL 9499073, at *3-5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method.). The Court will analyze Counsel's fee request under both theories.

    *ii.*    *Discussion*

    *a.*    *Percentage of the Common Fund*

Under the percentage-of-recovery method, courts typically calculate 25% of the fund as a benchmark for a reasonable fee award. *See In re Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"). The percentage can range, however, and courts have awarded more than 25% of the fund as attorneys' fees when they have deemed a higher award to be reasonable. *See Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. 2010) (finding an award of 33.3% of the common fund to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

reasonable because Class Counsel took the case on a contingent basis and litigated for two years, awards usually range from 20% to 50%, and no class member objected to the award); *Gardner v. GC Services, LP*, 2012 WL 1119534, at *7 (S.D. Cal 2012) (finding that a departure from the 25% benchmark was reasonable where the results achieved were favorable, the risks of litigation were substantial and the case was complex). When assessing the reasonableness of a fee award under the common fund theory, courts consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Technologies*, 559 F.Supp. 1036, 1046 (N.D. Cal. 2008) (citing *Viscaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

Plaintiff's request of 25% of the Settlement Amount carries with it a presumption of reasonableness in the Ninth Circuit. Consideration of the Ninth Circuit's factors also supports a finding of reasonableness in this instance. *See In re Omnivision*, 559 F.Supp. at 1046. As discussed above, Class Counsel has obtained a reasonably favorable result in light of Defendant's strong defenses and the uncertainty of whether the Court would even certify the class as a result of the varied situations of the putative class members. Moreover, the thousands of dollars which will be allocated to each of the 37 participating Class Members is a sum which exceeds most Class Members' expectations, and an amount that will make a substantial impact on each of their lives. *See Fees Mot.* 9.

Class Counsel also states that the skill involved weighs towards approving of the fee award because settlement was only an option as a result of "Class Counsel [being] able to convince Defendant that Class Counsel could potentially prevail on the legal issues regarding the exempt classification, overtime compensation, achieve class certification for all the employees, and overcome difficulties in proof as to monetary relief." *Id.* 3; *Blumenthal Decl.* ¶ 6(f). Class Counsel also avers that the application of class action procedure to wage and hour law is still a developing area of California law. *See Fees Mot.* 11 (citing *Brinker Restaurant Corp. v. Superior* Court, 53 Cal.4th 1004 (2012)). The issues presented therefore required substantial skill and expertise.

Class Counsel also notes that it completed the work on a contingent basis, sacrificing hourly work on which it would otherwise be able to rely in lieu of "risky contingent fee work in this case which could have paid Class Counsel nothing." *Fees Mot.* 3; *Blumenthal Decl.* ¶ 6(d); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Moreover, Class Counsel has advanced over $14,000 in costs which would not have been recovered had the case been lost. *Blumenthal Decl.* ¶ 6(i).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

Furthermore, it is not uncommon for courts to approve awards higher than the one requested by Class Counsel here. Class Counsel points to a slew of wage and hour class actions where fee requests of 30% or more were awarded. *See e.g. Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("nearly all common fund awards range around 30%"); *Ingalls v. Hallmark Mktg. Corp.*, 2011 WL 2648879, at *28-29 (E.D. Cal. June 30, 2011) (awarding attorneys' fees amounting to 30% of a $2.25 million settlement); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 13, 2007) (awarding 33% of the common fund); *In re Walgreen Co. Wage & Hour Litig.*, CV11-7664 PSG (FFMx) at *17 (C.D. Cal. Oct. 3, 2014) (finding 28% of the common fund reasonable).

Lastly, when notified that Class Counsel would apply for up to 25% of the Settlement Amount, no Class Members objected. The Court therefore finds Plaintiff's fee request reasonable under the common fund theory.

          *b.*     *Lodestar Cross-Check*

Class Counsel submits that under the lodestar method, it is entitled to $98,210, an amount substantially higher than the $73,750 it requests. *See Fees Mot.* 15-17.

To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *In re Washington Public Power Supply System Securities Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee. *Id.*

          1.     *Reasonable Rate*

The reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the 'prevailing market rates in the relevant community.'") (citation omitted); *Viveros v. Donahue*, CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the Court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g. Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, CV 11-02398 ODW (PLAx), 2011 WL 3021533, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

*3 (C.D. Cal. 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. 2009).

Plaintiff's counsel submits that the five attorneys who worked on this case had hourly rates ranging from $395 to $695. *See* Dkt. # 35-2 at 139. According to the records before the court, the billing rate of $695 accounts for only 27.5, or roughly 16%, of the 172.45 total hours spent on the case and belongs to the managing partner of the firm. Dkt. # 35-2 at 1, ¶ 1.

The Court finds that billing rates spanning from $395 to $695 are reasonable because they prevail in both the Central District of California and California at large for the type of work involved in a class action. *See, e.g. In re Walgreen co. Wage & Hour Litig.*, CV11-7664 PSG (FFMx) at *13-14 (C.D. Cal. Oct. 3, 2014) (approving rates ranging from $200 to $820); *POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842, at *4 (9th Cir. 2009) ("Based on the Court's familiarity with the rates charged by other firms in the Los Angeles legal community, the hourly rates of $700, $750, and $685, $525, $475 and $450 for partners and $425, $400, $360, $335, $325, and $275 for associates are reasonable.").

2.      *Reasonable Hours Expended*

With regard to the hours expended, an attorney award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). Here, the records demonstrate that Class Counsel spent 172.45 hours litigating this case. *See* Dkt. # 35-2 at 139. This case originated in 2014 and has been litigated for more than a year and a half. During that time Class Counsel has thoroughly reviewed Defendant's payroll records, twice revised the Complaint, drafted several motions, worked with an expert to assemble data for calculating damages, prepared for and participated in a mediation, attended court hearings and conducted extensive research. *Blumenthal Decl.* ¶ 6(c), 7(b); Dkt. 35-2 at 13-140. After reviewing the records submitted by Plaintiff, the Court finds that 172.45 hours is reasonable.

3.      *Multiplier*

Lastly, Plaintiff notes that the lodestar amount is $98,210 and Class Counsel is requesting only $73,750. Dkt. #35-2 at 10. That Plaintiff's fee request constitutes a negative multiplier of roughly .75 weighs in favor of approving the request. *See Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 244, 255 (2001) ("Multipliers can range from 2 to 4 or even higher); *Sutter Health*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

*Uninsured Pricing Cases*, 171 Cal.App.4th 495, 512 (2009) (affirming attorney fee award with 2.52 multiplier).

The Court finds that the requested fee amount is reasonable under both the common fund and lodestar theories and therefore GRANTS Plaintiff's motion for attorneys' fees.

### c. *Litigation Costs*

In addition to attorneys' fees, Class Counsel requests reimbursement of expenses incurred throughout litigation in the amount of $14,124.28, which is less than the $15,000 cost allocation in the Settlement Agreement. *See Mot.* 17; *Settlement Agreement* ¶¶ VI and XIV. Those expenses include costs for an expert witness to prepare a damage analysis, as well as filing fees, document copying fees, legal research charges, travel expenses and delivery charges. Dkt. # 35-2 at 11, ¶ 9. The Court is satisfied that these costs are reasonable, and therefore GRANTS Plaintiff's motion for costs in the amount of $14,124.28.

### D. Motion for Service Payment to Plaintiff

Plaintiff also requests $7,500 as an incentive award. *Fees Mot.* 17. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citations omitted); *see In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014). When considering requests for incentive awards, courts consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vraken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).

Here, Plaintiff assumed the risk that "he might possibly be liable for costs and be 'blacklisted' by other future employers for having sued Defendant in a class action." *Fees Mot.* 18. Class Counsel states that Plaintiff responded to numerous requests and correspondence from Class Counsel, was personally involved in settlement negotiation, and provided assistance and information which ultimately resulted in the settlement. *Id.* Moreover, the information Plaintiff provided was invaluable because he was the sole representative of the class. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |

The Court also notes that the service award is reasonable because it comprises only 2.54% of the total Settlement Amount and that given the relatively small class size, each Class Member will receive a substantial payment from the Net QSF. *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (finding that enhancement payment was not unfair when it would not "significantly reduce the amount of settlement funds available to the rest of the class.").

Accordingly, the Court GRANTS Plaintiff's motion for an incentive award.

III.   Conclusion

For the reasons stated above, Plaintiff's motion for final approval of class settlement and the plan of allocation and motion for attorneys' fees, costs, and incentive awards are GRANTED. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1. The Court approves settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement as fair, just, reasonable and adequate. The Parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Class Counsel is awarded $73,750 in attorneys' fees and $14,124.28 in costs. Additionally, Plaintiff is awarded $7,500. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court and the reasons stated in this order;

3. The Court approves payment in the amount of $3,750.00 to the California LWDA for the settlement of PAGA penalty claims and payment in the amount of $11,000 to Gilardi for settlement administration costs;

4. Gilardi is authorized to disburse funds pursuant to the terms of the Settlement Agreement and this order;

5. Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Settlement Class Members for all matters relating to the Litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 14-2207 PSG (SPx) | Date | April 18, 2016 |
|---|---|---|---|
| Title | Mark Turner v. C.R. England, Inc., *et al.* | | |